# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                              Case No. 09-CR-193

**DEVONTE M. WILLIAMS,**

        **Defendant.**

## RECOMMENDATION THAT THE DEFENDANT'S MOTION TO SUPPRESS BE DENIED

On August 18, 2009, the grand jury returned a three count indictment charging Devonte M. Williams ("Williams") with possessing two firearms after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2), (Count 1), possessing with intent to distribute five or more grams of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B), (Count 2), and possessing the firearms alleged in Count 1 in furtherance of the drug trafficking offense alleged in Count 2, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), (Count 3). (Docket No. 1.) On October 19, 2009, Williams filed a motion to suppress on the basis that the affidavit submitted in support of the search warrant failed to establish probable cause. (Docket No. 8.) The government has responded, (Docket No. 10), and the defendant has not replied. The pleadings on the defendant's motion to suppress are closed and the matter is ready for resolution. The Honorable Rudolph T. Randa has established December 10, 2009 as the deadline for the parties to submit proposed voir dire questions, and he has scheduled a jury trial to commence on December 14, 2009.

**Probable Cause**

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754, 755-56 (7th Cir. 2003) (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)). Probable cause is a fluid concept, United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990), determined by the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." McNeese, 901 F.2d at 592; Gates, 462 U.S. at 238 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995). "Probable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 244 n.13.

The probable cause determination of the judicial officer who issued a warrant shall be afforded great deference. Gates, 462 U.S. at 236. This court does not conduct a de novo review of the state court commissioner's probable cause determination. See id. Rather, this court shall upset a probable cause determination only if there was not a "substantial basis" for the issuing court to believe that a search would uncover evidence of wrongdoing. Id. There is a substantial basis for the issuing of a warrant when the affidavit, "read as a whole in a realistic and common sense manner . . . allege[s] specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." United States v. Newsom, 402 F.3d 780, 782 (7th Cir. 2005) (quoting United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999)).

2

The portion of the affidavit most relevant to the question of probable cause spans a mere two paragraphs. Because those paragraphs are central to the issue presently before the court, the court shall recount that portion of the affidavit in its entirety.

> 5) That affiant knows through information provided by a reliable confidential informant and personal involvement in this investigation, and through reports and documents maintained in the regular course of City of Milwaukee Police Department business, that 2824 North 25th Street is the lower unit of a two-story duplex, which is located in the City of Milwaukee. This residence is being used by "JERIMIAH"; black male; 20-24 years old, 507-509, 210-230lbs caramel complexion with dreads along with "DEVONTE"; black male; 18-20 years old, 507-509,180- 2101bs med complexion, with braids to store and distnbute quantities of cocaine base while armed with large semiautomatic pistol from the lower unit of this residence. The informant knows that "JERIMIAH" and "DEVONTE" both have access and control of the lower unit and conduct illegal cocaine transactions and keeps quantities of cocaine in the lower unit. The informant knows this from past experiences as well as the informants presence in the residence within the past seventy- two (72) hours. During that period of time (seventy- two hours) the informant observed an amount of cocaine, and cocaine transactions conducted by "JERIMIAH" and "DEVONTE" (while both were armed with a pistol), in which an individual exchanged a sum of U.S. Currency for a quantity of cocaine, which were provided by "JERIMJAH" and "DEVONTE". The informant knows from past experience what cocaine base looks like and how it is packaged for sale. "JERIMJAH" and "DEVONTE" also represented the substance as cocaine; The informant also demonstrated to affiant, that the informant are familiar with cocaine, knows what it looks like, knows how it is packaged for personal use, and packaged for resale; The confidential informant states that it is familiar with weapons and affiant confirmed through interrogation of the informant that the informant had a sound understanding of firearms basics and knew the difference between semi-automatic weapons, revolvers, rifles, shotguns and non-firearm weapons like compressed air guns.
>
> 6) The affiant believes that the confidential informant is a credible person because the informant is giving law enforcement officer information directly corroborated by the knowledge and past experience of law enforcement officers. The informant further provides the description of the suspect ("JERIMJAH" and "DEVONTE"), described his address, and provided detailed information of the criminal activity at the suspect's residence and the type of criminal offenses committed by "JERJMIAH" and "DEVONTE". The informant has provided detailed information in the past that has led to the execution of two (2) search warrants. The informant is responsible for the recovery of one (1) crime gun, marijuana and cocaine base within the past year and for providing the names, locations, and descriptions of subjects wanted on a felony warrants. These arrests have led to the charging of the subject(s) in state court. The informant also has shown the affiant the locations of drug houses that the affiant and other law enforcement officers have recovered and made arrests for narcotics possession offenses and firearms recoveries in the past.

(Docket No. 8-1 at 4-6.)

> Where information from an informant is used to establish probable cause, courts should assess the informant's credibility by considering the following factors: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005) (citing United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002); United States v. Jones, 208 F.3d 603, 609 (7th Cir. 2000)); see also United States v. Taylor, 471 F.3d 832, 839 (7th Cir. 2006) (citing United States v. Olson, 408 F.3d 366, 370 (7th Cir. 2005)). "None of these factors is determinative; . . . 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." Peck, 317 F.3d at 756 (quoting United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999)). The court shall analyze each of these factors in turn.

The CI is reported as having personally observed all the relevant conduct. Further, in regards to the fourth factor of the time lapse, "[t]he time lapse between the officers acquiring of the information and their application for the warrant--no more than 72 hours--was short." United States v. Garcia, 528 F.3d 481, 486 (7th Cir. 2008).

However, the information in the affidavit is remarkably un-detailed. The affiant seems to go out of his way to be ambiguous in describing the most relevant of the CI's observations. The affiant states that the CI observed "an amount of cocaine" and observed a transaction where an individual exchanged "a sum of U.S. Currency" for "a quantity of cocaine." Based upon the affidavit, there is no way of knowing whether the CI observed a few grams or a few kilograms of cocaine but this information is highly relevant to the question of whether one would expect to find evidence in the target residence up to three days later. See United States v. Bell, 2009 U.S. App. LEXIS 24257, 8

4

(7th Cir. 2009). The affidavit also omits certain basic details such as where the suspected cocaine was observed or any details as to the character of the firearms the CI observed.

Further, like the affidavit at issue in Bell, the present affidavit contains a conclusory statement that the CI knew what cocaine looked like. However, unlike the affidavit in Bell, the present affidavit contains additional information to support the CI's understanding. Not only did the two individuals represent the substance to be cocaine but the CI demonstrated for the affiant that he was familiar with cocaine. (Docket No. 8-1 at 5.)

But as in Bell, the affidavit also failed to identify the CI's relationship with the individuals identified in the affidavit or provide any explanation as to why the CI was in the residence so as to be able to make these observations. Such information is highly relevant to a court's ability to assess to CI's reliability. See id. at 7.

A point of significant distinction between the present case and Bell is in the fact that the present CI had proven reliable in the past. There was no indication that the CI in Bell had provided information to law enforcement in the past. Id. at 6-7. This was not in the case with the present CI. For example, the CI was demonstrated to be reliable by the fact that he previously provided information that led to the execution of two search warrants in the past. The CI has pointed out drug houses from which officers have recovered firearms and arrested individuals for drug crimes. The CI has also provided information as to the location of subjects wanted for felony warrants. Although there do not appear to have been any efforts to directly corroborate the CI's information regarding what was observed within the target location, the CI's previously demonstrated reliability serves a significant corroborative purpose. Finally, there is no indication that the CI appeared before the judicial officer who issued the search warrant.

Mindful that the court's review of a judicial officer's probable cause determination must be highly deferential, Gates, 462 U.S. at 236, and that the court must not focus upon shortcomings in

5

one aspect of an affidavit because "the whole may be more than the sum of the parts when assessing probable cause," Bell, 2009 U.S. App. LEXIS 24257, 8 (quoting United States v. Harris, 464 F.3d 733, 740 (7th Cir. 2006), the court concludes that the affidavit established probable cause to search the target residence. This is a close call due because, as discussed above, there are significant deficiencies in the level of detail provided by the CI. But in light of the short time period between the CI's observations and the application for the search warrant as well as the fact that the CI had proven reliable in the past, it is the conclusion of the court that the deficiencies in detail were not fatal and there was a substantial basis to believe that evidence of a crime would be found in the residence.

However, even if the affidavit failed to establish probable cause, the evidence seized need not be suppressed if the police officers who obtained and executed the warrant could have reasonably believed that they had obtained a valid warrant. See United States v. Leon, 468 U.S. 897 (1984).

**Leon Good Faith Exception**

Even if the court were to agree with Williams that the affidavit did not establish probable cause, suppression is appropriate only if the affidavit was so lacking in probable cause that no reasonable police officer could have believed that the warrant was valid. Id. at 922. If a police officer could have reasonably relied upon the search warrant, then evidence seized pursuant to the warrant shall not be suppressed simply because the search warrant was later determined to be defective. Id. "If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." Koerth, at 868. A police officer's decision to seek a warrant is prima facie evidence of good faith. United States v. Harju, 466 F.3d 602, 607 (7th

6
Case 2:09-cr-00193-RTR   Filed 11/10/09   Page 6 of 8   Document 12

Cir. 2006); United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir. 2004); Koerth, 312 F.3d at 868. Thus, the burden falls upon the defendant to rebut this prima facie case. Harju, 466 F.3d at 607.

Because the test is an objective one, it is not necessary that this court conduct an evidentiary hearing to determine whether the particular officers involved in the execution in the warrant at issue in this case did, in fact, rely upon it. The question is whether a reasonable and well-trained police officer would have believed that this warrant was valid. See Leon, 468 U.S. at 922 n.3; see also, United States v. Dickerson, 975 F.2d 1245, 1250 (7th Cir. 1992).

Although "police officers are 'charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles,'" Bell, 2009 U.S. App. LEXIS 24257, 13-14 (quoting Koerth, 312 F.3d at 869), police officers are not expected to be trained as lawyers and are not required review search warrants with the scrutiny demanded from a judicial officer. "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination." Harju, 466 F.3d at 606; see also Illinois v. Krull, 480 U.S. 340, 349 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."); Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). However, in light of the requirement that police officers must understand well-established legal principles, a police officer cannot blindly rely upon a search warrant simply because it bears the signature of a judge.

For the reasons the court discussed above, even if a court were to conclude that the affidavit was constitutionally deficient, any such deficiencies were not so glaring that it would have rendered it unreasonable for an officer to rely upon the search warrant. Thus, it is the recommendation of this

7

court that the police were entitled to rely on the warrant and therefore, Williams's motion to suppress should be denied.

**IT IS THEREFORE RECOMMENDED** that Williams' motion to suppress, (Docket No. 8), be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 10th day of November 2009.

s/ AARON E. GOODSTEIN  
AARON E. GOODSTEIN  
U.S. Magistrate Judge